IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| JOHN TODD, | ) | CV 10-127-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| IAN BAKER; CHAD ZIMMERMAN; | ) | |
| CITY OF KALISPELL; CITY OF | ) | |
| KALISPELL POLICE DEPARTMENT; | ) | |
| KALISPELL POLICE CHIEF ROGER | ) | |
| NASSET; and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

John Todd brings this case under 42 U.S.C. § 1983 alleging violations of his

federal constitutional rights stemming from a September 2007 incident in which

Kalispell City Police Officer Ian Baker tasered Todd. The Complaint also

maintains state claims for violation of Todd's rights under the Montana

Constitution, negligence, assault and battery, infliction of emotional distress, as

well as claims for compensatory and punitive damages.

There are two motions for summary judgment pending. The City of Kalispell, the Kalispell Police Department, and Police Chief Roger Nasset (collectively "the City") argue that the requirements for municipal liability under § 1983 have not been met. The officers involved in the incident, Officer Ian Baker ("Baker") and Officer Chad Zimmerman ("Zimmerman")(collectively "the Individual Defendants") argue they are entitled to qualified immunity on the federal claims and that they are entitled to immunity as to the remaining claims under Montana Code Annotated § 2-9-305(5). The defendants also allege that Todd failed to establish the duty element of negligence and to demonstrate "severe" distress to support his claim for infliction of emotional distress.

For the reasons discussed below, the defendants are entitled to summary judgment on all Todd's claims except his excessive use of force claim under the Montana Constitution. Additionally, the Individual Defendants are immune from liability for this claim under Montana Code Annotated § 2-9-305(5), and must be dismissed from the action. *Griffith v. Butte Sch. Dist. No. 1*, 244 P.3d 321 (Mont. 2010). The case is alive as to the other defendants on the remaining claim.

### FACTUAL BACKGROUND

On November 13, 2007, Todd celebrated his 23rd birthday by going out to two Kalispell bars. On his way home around 11:00 p.m., Todd stopped walking

and sat on a grass median between the sidewalk and the parking lot of Murdoch's Ranch & Home Supply store. Officers Baker and Zimmerman were on patrol in a patrol car in the area. As Zimmerman pulled the vehicle into the south entrance of the Murdoch's parking lot, he noticed Todd sitting on the grass. The officers, both in uniform, proceeded to get out of the patrol car and approach Todd. Zimmerman proceeded toward Todd on the sidewalk while Baker snuck up on him from behind, through the parking lot. As he got closer, Zimmerman asked, "Hey man, are you alright?" Baker then shined his flashlight on Todd from approximately 20 feet away. Claiming that he saw what he thought was a pill container with a green leafy substance in it, Baker stated, "Hey, we have dope."

Following these two statements—although there appears to be some confusion as to which statement came first—Todd stood and began to run away from the officers down the sidewalk. Both officers gave chase, but began to lose ground. One of the officers may have yelled at Todd to stop. While Baker was still within approximately 20 feet of Todd, he deployed his Taser into Todd's back. The taser was employed for reasons that were either unwarranted or perhaps justified, questions for the jury. Todd became incapacitated and fell to the sidewalk with both hands underneath him, striking his head.

Zimmerman pulled Todd's hands from underneath him and noted that Todd had a cut over his left eye and appeared to have a bloody nose. Zimmerman

contacted dispatch and requested an ambulance. Prior to going to the hospital,

Baker collected a key, a key chain, and the pill bottle with the suspected

marijuana. The suspected drugs were tested and determined to be marijuana.

Todd was transported to the emergency room by ambulance and cited for

obstructing an officer and possession of dangerous drugs. Todd eventually

entered a plea agreement, entering a nolo contendere plea as to the possession

charge, and the obstruction charge was dismissed. He was given a six-month

deferred sentence on the possession charge, which was later dismissed with

prejudice.

## ANALYSIS

Parties are entitled to summary judgment if they can demonstrate "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where

the documentary evidence produced by the parties permits only one conclusion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). On a motion for

summary judgment, this Court must determine whether a fair-minded jury could

return a verdict for the non-moving party. *Id.* at 252. Only disputes over facts that

might affect the outcome of the suit under the governing law will properly

preclude entry of summary judgment; factual disputes which are irrelevant or

unnecessary to the outcome are not considered. *Id.* at 248.

# I.    Section 1983 Claims

The City is not liable here under § 1983, and Officers Baker and Zimmerman are entitled to qualified immunity. Thus, the defendants are entitled to summary judgment on Todd's federal claims.

## A.    The City is not liable under § 1983.

A municipality cannot be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). However, a municipality can be held liable under § 1983 if it had a "deliberate policy, custom or practice that was the 'moving force' behind the constitutional violation" suffered by the plaintiff. *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95). A plaintiff can establish such a policy by demonstrating that "that the municipality's deliberate indifference led to an omission," *Gibson v. Co. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002), or that "'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinates's unconstitutional decision of action and the basis for it,'" *Clouthier v. Co. of Contra Costa*, 591 F.3d 1323, 1259 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 2002)). The plaintiff must then show that the policy "caused" the constitutional violation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). A municipality is not automatically liable under § 1983 if an

officer applies a policy in an unconstitutional manner. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) (citation omitted).

### 1. The Department Policy is not unconstitutional on its face.

The first question is whether the Department's policies regarding the use of force are facially unconstitutional. Todd contends they are because they do not inform officers to take into account the severity of the crime when determining the appropriate level of force to use in a given situation. The City responds that the Department's policies mirror the reasonableness standard outlined in *Graham v. Connor*, 490 U.S. 386, 396–97 (1989), and that an explicit inclusion of the *Graham* factors is not necessary. The City is correct.

*Graham* recognizes the "right to use some degree of physical coercion or threat thereof" to effect either an investigative stop or an arrest. 490 U.S. at 396. Three factors inform the limitations of this right: 1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate risk to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Additionally, the unique facts and circumstances of each situation must be considered. *Id.*

A plain reading of the Department's policies demonstrates that they reflect

the "reasonableness" test outlined in *Graham*. (*See* City's SUF, doc. 32 at ¶¶ 23–25.) They require officers to use only the level of force that is "reasonable and necessary" to effect an arrest or gain control of a situation. For example, the policies state that "[e]ach use of force situation is unique and will be evaluated based upon the circumstances faced by the officer at the time the force is applied" and that "as the situation that necessitated the use of force diminishes, so too shall the use of force." (*Id.*) Although the policies do not expressly require that officers consider the severity of the crime at issue, they are still constitutional. *See e.g, Phillips v. City of Fairfield*, 406 F. Supp 2d 1101, 1117 (E.D. Cal. 2005) (determining that police policy only requiring officers never to use "unnecessary force" was constitutional). Thus, Todd's claim that the Department's formal policy fails to limit the use of force officers use is not viable.

> ### 2. The City was not deliberately indifferent in its training, supervision, and discipline of Baker and Zimmerman.

Todd also contends that the City was deliberately indifferent in training, supervising, and disciplining Baker and Zimmerman. "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Clouthier*, 591 F.3d at 1259 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). A showing of negligence is not enough. *City of Canton v. Harris*, 489 U.S. 378, 407 (1989).

In limited situations, a local government's failure to adequately train employees may give rise to liability under § 1983. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on the failure to train." *Id.* A plaintiff must show that the allegedly inadequate police training "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. The standard for "deliberate indifference" is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier*, 591 F.3d at 1249 (quoting *City of Canton*, 489 U.S. at 390). Typically, a plaintiff must show a pattern of similar constitutional violations. *Connick*, 131 S. Ct. at 1360 (internal citation and quotation omitted).

Todd contends that because the Department policies fail to take into account the "severity of the crime at issue," any training based on those policies rises to the level of deliberate indifference. However, as discussed above, the policies are not obviously inadequate and Todd fails to show any "pattern" of constitutional violations. Moreover, Todd fails to provide any evidence that a deficiency in training caused the conduct in question. *Trevino*, 99 F.3d at 918.

A municipality can also be held liable under § 1983 for failing to discipline

its employees. *See Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003).

However, the failure to overrule an unconstitutional act does not automatically

implicate § 1983 liability. *Gillette*, 979 F.2d at 1347; *Santiago v. Fenton*, 891

F.2d 373, 382 (1st Cir. 1989). This case is distinguishable from *Larez v. City of*

*Los Angeles*, in which the Ninth Circuit held that there may be a constitutional

violation where the entity fails to take remedial measures after a constitutional

violation. 946 F.2d 630, 647 (9th Cir. 1991). In that case, the plaintiffs provided

evidence from a two-year study of complaints against the Los Angeles Police

Department demonstrating that it was "almost impossible for a police officer to

suffer discipline as a result of a complaint lodged by a citizen." *Id*. No similar

showing has been made here.

A patrol lieutenant investigated the circumstances of Todd's stop and arrest

and determined that the actions of officers Baker and Zimmerman conformed with

Department policy. The investigation was conducted pursuant to the Department's

comprehensive complaint system . Between 2005 and 2007, the Department

investigated 33 formal complaints, including complaints against Baker and

Zimmerman. Baker and Zimmerman were sanctioned in three instances and

exonerated in the others, demonstrating that it is not "almost impossible" for them

to suffer discipline. Thus, the Department's supervisory and disciplinary actions

do not demonstrate "deliberate indifference" rising to the level of municipal

liability. Nor is there any evidence that the alleged deficiency in supervision actually caused the conduct in question. *City of Canton*, 489 U.S. at 1206.

### 3. Police Chief Nasset did not ratify the officers' conduct.

Todd also asserts that the City is liable under § 1983 because Chief Nassett, as a final policy-making authority, ratified the officers' conduct. A single decision by a municipal policymaker "may be sufficient to trigger § 1983 liability under *Monell*, even though the decision is not intended to govern future situations." *Gillette*, 979 F.2d at 1347. However, "[s]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy . . . the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy." *Id.* at 130. The plaintiff must demonstrate "evidence of a conscious, affirmative choice on the part of the authorized policymaker" to ratify the conduct. *Clouthier*, 591 F.3d at 1250 (internal quotations and citations omitted). Todd has not made this showing here.

Both parties concede that Nasset is the official policymaker for the City on police matters. As mentioned above, a patrol lieutenant from the Department investigated Todd's tasering and arrest. This officer determined that the actions of officers Baker and Zimmerman conformed with Department policy. (Defs.' SUF, doc. 32, ¶¶ 61-62.) Chief Nasset did not take any action demonstrating a

"conscious [or] affirmative choice" to ratify that determination or the officers' conduct.  Furthermore, Chief Nasset was not on the scene when the incident occurred, and he was not asked what course of action to follow at that time.  *See e.g. Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986).  Thus, Chief Nasset's actions do not amount to ratification under § 1983.

A "city cannot be held liable under § 1983 unless [the plaintiff] proved the existence of an unconstitutional municipal policy."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988).  Finding no unconstitutional policy or custom, summary judgment is granted in favor of the City regarding municipal liability under § 1983.

**B.     The Individual Defendants are entitled to qualified immunity regarding Todd's § 1983 claims.**

The doctrine of qualified immunity protects public officials from a suit for damages if the actor could have reasonably believed his conduct was lawful in light of clearly established law and the information possessed by the official. *Anderson v. Creighton*, 483 U.S. 635, 637-39 (1987).  "[It] balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from . . . liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Even when a constitutional violation occurs, "law enforcement officers nonetheless are

entitled to qualified immunity if they act[ed] reasonably under the circumstances." *See KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008) (citation omitted).

An officer is not entitled to qualified immunity if 1) his conduct violated a constitutional right and 2) the relevant law was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). The court must determine whether the law was "'sufficiently clear' that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson*, 483 U.S. at 640).

Officers Baker and Zimmerman are entitled to qualified immunity. They had reasonable suspicion to conduct a Terry stop and probable cause to arrest Todd, and the law was not clearly established that tasing Todd to effectuate a *Terry* stop or an arrest under these circumstances was unconstitutional. *See Pearson*, 555 U.S. at 246 (holding the court can consider either prong of the qualified immunity test first).

### 1. Fourth Amendment: Seizure

The City argues that Baker and Zimmerman had probable cause to arrest Todd when he was tased. The officers agree, and additionally argue that the tasing was necessary to effectuate a *Terry* stop, and thus only reasonable suspicion was required. Regardless of whether the tasing constituted an arrest or a means to effectuate a *Terry* stop, the requisite standard was satisfied. It should be noted that the indiscriminate use of tasers is the source of much litigation.

For a *Terry* stop to be lawful under the Fourth Amendment, the officer must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot[.]'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This standard of proof is less than that of probable cause. *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). Whether reasonable suspicion exists for a *Terry* stop depends on the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the individual had committed a crime." *United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir. 2003) (citations omitted).

The officers here were justified in approaching Todd to conduct a welfare check. He was sitting alone in the middle of a median in an empty parking area at 11:00 p.m., and he appeared cold. Upon approaching him, Baker claims he

noticed a pill bottle without a prescription label on it on the ground next to Todd. It appeared to contain a leafy substance, which he believed to be marijuana based on his training and experience. Given his claim of being twenty feet away at night, one might inquire about his visual acuity if the claim were to go forward. Baker told his partner, "We have dope." At that point, the officers ostensibly had reasonable suspicion to conduct an investigatory stop to confirm or dispel their suspicion that Todd was in possession of an illegal substance.

Before the officers could do so, however, they claim Todd jumped up and ran from the police. His flight raised a "reasonable possibility of danger or flight," justifying some use of force to effectuate a *Terry* stop. *Wash. v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996); *see also United States v. Fields*, 449 Fed. Appx. 146, 148-49 (3d Cir. 2011) (determining that officers' use of a taser did not rise to the level of an arrest when suspect failed to yield to authority by showing his hands). This course of conduct differs from the days when police talked instead of tased.

With his flight, reasonable suspicion legally ripened into probable cause. His flight prevented the officers from inquiring into whether he had a medical marijuana license. *See e.g. Allen v. Kumagai*, 356 Fed. Appx. 8, 9 (9th Cir. 2009) (police "officers' knowledge of [suspect's] medical [marijuana] authorization may be relevant to whether they had probable cause to believe he had committed a crime"); *Co. of Butte v. Superior Ct.*, 175 Cal. App.4th 729, 738 (Cal. 5th Dist.

2009) ("Any consideration of probable cause must include the officer's consideration of the individual's status as a qualified medical marijuana patient"). Based on the totality of the circumstances, on this proof, there was a fair probability that Todd was not legally entitled to possess marijuana and that he was in possession of an illegal substance.

The time of night, the observation of the suspected marijuana next to Todd, and the fact Todd fled when the marijuana was mentioned satisfy both the reasonable suspicion and probable cause standards under the Fourth Amendment. The minor inconsistencies in the officers' reports and interviews do not impact these factors. Because the officers had the requisite legal cause to seize Todd, the officers are entitled to qualified immunity as to this claim.

### 2. Fourth Amendment: Excessive Use of Force

The officers are also entitled to qualified immunity as to Todd's Fourth Amendment claim that they used excessive force. The right allegedly violated by Officer Baker was not clearly established as of November 13, 2007, the date Todd was tased.

Prior to the Ninth Circuit's decision in *Bryan v. McPherson*, 630 F.3d 805, 833 (9th Cir. 2010), the law on when taser use constitutes excessive force was not "sufficiently clear that every reasonable official would have understood" what conduct violates that right. *al-Kidd*, 131 S.Ct. at 2083 (internal quotation marks

and citation omitted). Until *Bryan*, "there was no Supreme Court decision or decision of our court addressing the use of a taser in dart mode." *Mattos v. Agarano*, 661 F.3d 433, 452 (9th Cir. 2011) (internal quotations and citations omitted). And the three other federal courts of appeal cases addressing taser use had found no constitutional violation based on clearly established law. *Id.*

However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). This principle is especially relevant in qualified immunity cases, otherwise "officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Mattos*, 661 F.3d at 442. Accordingly, "[t]he effect of *Bryan*'s qualified immunity analysis is that before the *Bryan* opinion, a police officer was entitled to qualified immunity against any excessive force claim based on the use of a taser, provided that at least *some* degree of force was reasonable under the circumstances." *Jackson v. Johnson*, 797 F. Supp. 2d 1057, 1071 (D. Mont. 2011) (emphasis in original).

Legally at least some degree of force was reasonable under the circumstances here because Todd was fleeing the police and evading arrest. *Miller v. Clark Co.*, 340 F.3d 959, 967 (9th Cir. 2003); *Graham*, 490 U.S. at 396; *Chew v. Gates*, 27 F.3d 1432, 1442 (9th Cir. 1994) (fleeing and hiding from the police constitutes resisting arrest in the *Graham* context). Thus, the officers are

entitled to qualified immunity for Todd's excessive use of force claim under the Fourth Amendment.

### 3. Other Federal Constitutional Claims

The Individual Defendants contend that Todd has failed to establish his claims under the Fifth, Eighth, Ninth, and Fourteenth Amendments.  Todd appears to concede this point, stating he "agrees with [the Individual] Defendants that analysis is proper under Fourth Amendment law."  (Pl.'s Reply, doc. 44, 2).

The Individual Defendants' arguments are deemed well-taken.  *See* L.R. 7.1(d)(1)(B).   Fifth Amendment due process applies only to federal actors or entities, *see Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1406 (9th Cir. 1996), and defendants are not federal actors.  The Eighth Amendment only applies after conviction and sentence.  *E.g. Whitley v. Albers*, 475 U.S. 312, 318-319 (1986).  The Ninth Amendment has not been interpreted as independently securing constitutional rights for purposes of alleging constitutional violation.  *San Diego Co. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996).  Todd has not established a due process violation that would fall under the Fourteenth Amendment.  *See Co. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  Thus, the Individual Defendants are entitled to summary judgment as to these claims as well.

## II.  Todd's Claims under the State Constitution

Todd raised parallel claims under the Montana Constitution. The rules limiting § 1983 liability do not apply to state constitutional claims. Government entities may be held vicariously liable for their employees' violations under the Montana Constitution, *see e.g. Griffith*, 244 P.3d 321; Mont. Code Ann. § 2-9-102, and Montana law does not provide qualified immunity for a violation under Article II, § 11 of the Montana Constitution, *Dorwart v. Caraway*, 58 P.3d 128, 140 (Mont. 2002). However, the Individual Defendants are immune from liability under Mont. Code Ann. § 2-9-305(5).

## A.    Article II, §§ 10 and 11: Seizure

Article II, § 11 of the Montana Constitution guarantees Montanans security from unreasonable searches and seizures. A reasonable suspicion and probable cause analysis under this article is substantively the same as a reasonable suspicion and probable cause analysis under the Fourth Amendment. *See State v. Van Dort*, 68 P.3d 728, 731 (Mont. 2003); *Peschel v. City of Missoula*, 664 F. Supp. 2d 1149, 1161 (D. Mont. 2009). Montana's privacy clause, Article II, § 10 is not implicated if a seizure is supported by the requisite cause. *Peschel*, 664 F. Supp. 2d at 1161 (where a "seizure by a law enforcement officer is lawful, i.e., supported by probable cause, the right to privacy under Article II, § 10 is not implicated and cannot be relied upon to invalidate the search or seizure). But "existing circumstances [must] require immediate arrest." Mont. Code Ann. § 46-

6-311(1).

Because the police officers legally had reasonable suspicion to seize and probable cause to arrest Todd under the Fourth Amendment, they also had reasonable suspicion and probable cause under the Montana Constitution. Additionally, Todd's flight created circumstances that required immediate arrest. Accordingly, Todd's rights under Article II, §§ 10 and 11 of the Montana Constitution were not violated unless the officers used excessive force.

**B.      Article II, § 11: Excessive Use of Force**

Due to the lack of state case law in this area, it is necessary to look to the excessive use of force standard developed under the Fourth Amendment. *See Peschel*, 644 F. Supp. 2d at 1161 (employing federal jurisprudence regarding excessive use of force claim under the Montana Constitution). As discussed above, legally some force was necessary because Todd was attempting to flee. However, the force employed may have been excessive because Baker failed to warn Todd he was going to deploy the taser.

The court first looks to the nature and quality of the intrusion and second to the governmental interest in the use of force. *Bryan*, 630 F.3d at 823 (internal quotation marks omitted). Baker shot Todd with an Taser X26. The Ninth Circuit describes that experience in *Bryan*:

> The X26 uses compressed nitrogen to propel a pair of 'probes'–aluminum darts tipped with stainless steel barbs connected to

the X26 by insulated wires–toward the target at a rate of over 160 feet per second. Upon striking a person, the X26 delivers a 1200 volt, low ampere electrical charge through the wires and proves into [the victim's] muscles. The impact is as powerful as it is swift. The electrical impulse instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless.

*Id.* at 824. The person tasered also experiences excruciating pain "that radiates throughout the body." *Id.* Here, Todd lost consciousness as a result of being shot by the taser, and he "suffered a cut over his left eye and a bloody nose from the fall." (Pl.'s Compl., ¶ 21.) Because the Ninth Circuit in *Bryan* determined that a taser, in dart-mode, "constitute[s] an intermediate, significant level of force," 630 F.3d at 826, Baker's use of a taser in this situation must be justified by the governmental interest involved.

The three *Graham* factors help courts assess the government's interest in a use of force situation: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The factors aim to balance the intrusion of an individual's Fourth Amendment rights against "the countervailing governmental interests at stake." *Id.* The Ninth Circuit has described the threat to the safety of officers or others as the "most important" factor. *Mattos*, 661 F.3d at 441. These factors are not exclusive; a court should examine the totality of the circumstances, *Bryan*, 630 F.3d at 826, considering "whatever specific factors may be appropriate in a

particular case, whether or not listed in *Graham*," *Franklin v. Foxworth*, 31 F.3d

873, 876 (9th Cir. 1994).

A jury could find that Baker used excessive force against Todd. The first

two *Graham* factors are not present here. Todd was only suspected of a

possessing a small amount of marijuana, a relatively minor crime, at the time he

was tased. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007)

(noting that trespassing and obstructing a police officer were not severe crimes).

The evidence does not suggest that Todd posed a threat to officer safety or the

safety of others. Though the Individual Defendants maintain that they did not

know if Todd was armed, that is not sufficient to create a suspicion of danger.

*Bryan*, 630 F.3d at 826 (there was not sufficient evidence to conclude a man posed

"an immediate threat" where he got out of his car against an officer's explicit

orders and continued to "yell gibberish" at the officer and "hit his thighs"). Here,

Todd began to run away from the officers when they approached. He did not

engage in any aggressive behavior or yell at the police. Thus, the second and most

important *Graham* factor is not realized here. However, as discussed above, the

third *Graham* factor is present. Todd attempted to flee once the police began to

approach him, arguably creating an important government interest in using some

force to stop him. This last factor is a point of contention that a jury must resolve.

The answer lies in all the circumstance that gave rise to the unholstering and use

of the taser.

Though the government was legally entitled to use some force, a jury may conclude the use of force was excessive under the circumstances because the officers did not clearly announce that they were police, they failed to warn Todd before tasing him, and alternative means to accomplish the seizure may have been feasible including physically chasing him down, on foot or by car.

Unlike in *Bryan, Mattos*, and *Jackson*, it is not clear that Baker and Zimmerman identified themselves as officers prior to using the taser. According to the Individual Defendants, the patrol car was parked in Todd's line of sight and both officers were in full uniform. However, the officers never announced their authority, and it is unclear whether Todd saw the patrol car and whether he could see their uniforms in the dark. It is also unclear whether Todd was ordered to stop, and the evidence shows the officers did not warn him that he would be tased if he kept running. The Ninth Circuit has "previously concluded that an officer's failure to warn, when it is plausible to do so, weighs in favor of finding a constitutional violation." *Mattos*, 661 F.3d at 451; *Bryan*, 630 F.3d at 831; *Boyd v. Benton Co.*, 374 F.3d 773, 779 (9th Cir. 2004); *Jackson*, 797 F. Supp. 2d. at 1070. Police officers should provide warnings when "feasible," even when the force employed is less than deadly. *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001) (finding that a failure to warn should be considered under the

*Graham* factors but refusing to require such warning whenever less than deadly force is employed).  Such a warning should be given if there is ample time and there is no reason not to do so.  *Id.*  A jury might determine the officers should have warned Todd that tasing was imminent.

Alternative tactics to effect the arrest may also have been available. The Individual Defendants claim their alleged attempts to yell at Todd to stop and chase him on foot qualify as attempted alternatives to their use of force.  However, a jury might find other efforts also were warranted.  *See Bryan*, 630 F.3d at 831 (finding that one possible alternative would be to call for backup); *Young v. . of Los Angeles,* 655 F.3d 1156, 1165–66 (9th Cir. 2011) (determining that the officer could have considered trying to warn the suspect that force would be used if he failed to comply with the officer's request); *Miller*, 340 F.3d at 967 (determining that another less forceful means of arrest includes signaling at the suspect with emergency lights and sirens).

In summary, though Todd's flight legally justified some use of force, the government's interest in stopping him may not be sufficient to justify the level of force employed.  The Defendant's motion for summary judgment on Todd's excessive use of force claim under Article II, § 11 of the Montana Constitution is thus denied.

**C.    Infliction of Emotional Distress**

Even if Officer Baker used excessive force on Todd, Todd has not demonstrated a prima facie claim for emotional distress. *See McConkey v. Flathead Elec. Coop.*, 125 P.2d 1121, ¶ 55 (Mont. 2005). This claim may be appropriately determined on summary judgment because "[i]t is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 425 (Mont. 1995).

The same basic elements are required to prove both negligent infliction of emotional distress and intentional infliction of emotional distress. *Sacco*, 896 P.2d at 428. A claim for emotional distress "will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's [negligent or] intentional act or omission." *Id.* The distress inflicted must be "so severe that no reasonable [person] could be expected to endure it." *Renville v. Fredrickson*, 101 P.3d 773, 776 (Mont. 2004). Several factors may be considered, including whether the distress has been physically manifested, the intensity and duration of the distress, the circumstances under which the infliction occurred, and the relationship of the parties involved. *Id.*

In his response brief to the Individual Defendants' summary judgment motion, Todd reasons only that he was prescribed Xanax, propranolol, and other

anti-anxiety medications "to treat the effects of his brain damage," and he provides

no further evidence of anxiety, distress, or sleeplessness. (Doc. 47 at 28.)[1]  This is

insufficient to demonstrate that Todd suffered severe emotional distress as a result

of being tasered.  Although the medication goes to the possible intensity of Todd's

distress, it says nothing of its duration or further physical manifestation.  Nor does

it show that its intensity is such that no reasonable person could be expected to

endure it.  Accordingly, Todd has not shown serious or severe emotional distress

which this court may permit a jury to consider.

## D.     Negligence

Todd alleges negligent use of excessive force; negligent training,

supervision and discipline of law enforcement officers; negligent enactment,

enforcement, and violation of law enforcement policies and procedures; negligent

violation of John's constitutional, statutory and common law rights; and negligent

performance of official duties.  The City contends that it is not liable for

negligence because the officers had no duty to Todd under the public duty

doctrine.  Todd argues that because his alleged injuries occurred when he was

tasered, he was in police custody at that time, meeting the requirements of an

---

[1] In ruling for a motion on summary judgment, the Court is only required to consider materials cited in the motion, but may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  Although elsewhere in the record Todd made statements to the effect that he no longer engaged socially as he did prior to the incident, this was not cited in the motion.  But even if this Court were to consider this other information, Todd would still be unable to show severe emotional distress due to the high threshold established in emotional distress cases.

exception to the public duty doctrine.

The existence of a legal duty is a matter of law to be determined by the court. *Massee v. Thompson*, 90 P.3d 394, 400 (Mont. 2004). Under the public duty doctrine, "a general duty to protect does not give rise to liability for a particular individual's injury absent a greater duty imposed by a special relationship." *Phillips v. City of Billings*, 758 P.2d 772, 775 (Mont. 1988) (finding no duty where officers failed to arrest an individual who later caused a drunk driving accident). There are four circumstances under which a special relationship may arise.

> A special relationship can be established (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under the circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

*Nelson v. Driscoll*, 983 P.2d 972, 978 (Mont. 1999) (citation omitted); *Massee*, 90 P.3d at 403.

The exception based on "custody" is the only one raised here. Todd contends that the officers took charge of him as soon as the taser probes hit his body, and thus Todd suffered harm while in custody. However, even if Todd was in custody after the taser probes struck him, the only allegedly negligent actions occurred before that, when it is clear that Todd was not in police custody. Todd

was sitting on a median, and then he was running from the police. His liberty was not constrained in any way; the officers had not even effectuated a *Terry* stop yet because Todd started fleeing after Baker told his partner there was marijuana. The officers' duty was general, not to Todd specifically. In contrast, the officers in *Peschel* were liable for negligent acts committed once Peschel had been tackled; the officers thereafter had a duty to complete the arrest and provide medical treatment for his injuries with reasonable care.

Here, the firing of the taser is the only basis for Todd's negligence allegations, based on the arguments and facts presented here, it occurred before the officers owed him a duty as his custodians. *See DeBoer v. City of Olympia*, 183 Fed. Appx.671, 672 (9th Cir. 2006) (unpublished) (holding Washington's public duty doctrine barred negligence liability for use of excessive force while arresting the plaintiff); *James v. City of Seattle*, 2011 WL 6150567, *15 (W.D. Wash. Dec. 12, 2011) (citing other cases and holding the public duty doctrine precluded liability where police officers tased a man who was driving and he lost control of his vehicle). Accordingly, based on the record in this case, Defendants are entitled to summary judgment on Todd's negligence claims.

**E.     Assault and Battery**

The parties agree that Todd's claims as to assault and battery are barred by the relevant statute of limitations. Thus, summary judgment is granted in the

defendants' favor regarding the claims of assault and battery.

**F.    Montana Code Annotated § 2-9-305**

Because Baker and Zimmerman were acting within the course and scope of

their employment, they are immune from liability under Montana Code Annotated

§ 2-9-305.  In relevant part, the statute provides:

> In an action against a governmental entity, the employee whose conduct
> gave rise to the suit is immune from liability by reasons of the same
> subject matter if the governmental entity acknowledges or is bound by
> a judicial determination that the conduct upon which the claim is
> brought arises out of the course and scope of the employee's
> employment, unless the claim constitutes an exclusion provided in
> subsections (6)(b) through (6)(d).

Mont. Code Ann. § 2-9-305(5).  In order for this immunity to attach, the plaintiff

must name a governmental entity as a defendant, the governmental entity must

acknowledge or be bound by a judicial determination that the employee's conduct

arose out of the course and scope of the his employment, and recovery against the

government entity must be possible.  *Story v. City of Bozeman*, 856 P.2d 202, 210

(Mont. 1993)(citing *Stansbury v. Lin* 848 P.2d 509, 511 (Mont 1993)), *overruled*

*on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap*, 79 P.3d 250 (Mont.

2003).

Here, the City of Kalispell, a government entity, is a named defendant.  The

tasing occurred when Baker and Zimmerman were on patrol for the Kalispell

Police Department.  The City's internal review determined that Zimmerman and

Baker "acted appropriately in their decision to contact, investigate and use the Taser on Todd" (aff. Police Chief Nassett, doc. 31, ¶ 18) and neither was sanctioned. (Doc. 32-2, Interog. 11.) No evidence suggests they were not acting within their roles as police officers. Thus, Baker's and Zimmerman's conduct arose out of the course and scope of their employment. The final factor for 2-9-305 immunity is also met. The City can be held liable for employees' actions that violate the state constitution. *See e.g. Griffith*, 244 P.3d 321; Mont. Code Ann. § 2-9-102. Accordingly, § 2-9-305 serves as a complete bar to the individual defendants' liability and they must be dismissed. *Griffith*, 244 P.3d at 335.

## CONCLUSION

In conclusion, Defendants are entitled to summary judgment on all Todd's claims except his excessive use of force claim under the Montana Constitution, and the Individual Defendants are immune from liability for that claim under Mont. Code Ann. § 2-9-305(5).

IT IS HEREBY ORDERED:

1. The City's motion for summary judgment (doc. 27) and the Individual Defendants' motion for summary judgment (doc. 33) are GRANTED in part and DENIED in part as follows:

    a. Summary judgment is GRANTED in favor of the Defendants as to each of Todd's federal constitutional claims brought under § 1983.

b.  Summary judgment is GRANTED in favor of the Defendants as to Todd's claim under the Montana Constitution that the officers lacked reasonable suspicion or probable cause to tase him.

c.  Summary judgment is DENIED as to Todd's excessive-use-of-force claim under the Montana Constitution.

d.  Summary judgment is GRANTED in favor of the Defendants as to Todd's infliction of emotional distress, negligence, and assault and battery claims.

2.  Defendants Ian Baker and Chad Zimmerman are entitled to qualified immunity as to Todd's federal claims and are immune from liability for the remaining claims under Montana Code Annotated § 2-9-305(5).  Accordingly, they are DISMISSED from this action.

Dated this 4th day of June 2012.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT